UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 26-175 (JRT/ECW)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HESTER SOPHIA WEIHMANN,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | MOTION TO DISQUALIFY |

## INTRODUCTION

The United States respectfully requests that Judge John R. Tunheim recuse himself from the above captioned matter.

Defendant is charged with (1) False Claim of Citizenship in Order to Vote in violation of 18 U.S.C. § 611, and (2) Voting by Alien in violation of 18 U.S.C. § 1015(f). The indictment was returned by a grand jury in this district seven (7) days after The New York Times published an article ridiculing the Administration's immigration enforcement priorities. Specifically, Judge Tunheim is quoted as stating "[t]hey weren't arresting, in my view, people who were dangerous criminals on the street." That is not the law (or even about the law). But the law prohibits voting illegally. It also compels recusal when a judge's partiality might reasonably be questioned. And in the light of his unethical statements to the New York Times, the American people will undoubtedly question whether Judge Tunheim can be impartial this case.

## BACKGROUND

On September 24, 2026, a grand jury returned a two-count-indictment charging Defendant with (1) False Claim of Citizenship in Order to Vote in violation of 18 U.S.C. § 611, and (2) Voting by Alien in violation of 18 U.S.C. § 1015(f). ECF No. 1. As set forth in the indictment, Defendant is alleged to have voted illegally as an alien in Minnesota and falsely claimed United States citizenship in order to vote on November 5, 2024. *Id.* The case was assigned to Judge John R. Tunheim. *Id.* On September 29, 2026, before Magistrate Judge Elsa M. Bullard, Defendant was arraigned and pled not guilty to both charges. ECF No. 10.

Just a week before the grand jury returned the indictment, the New York Times published an article titled *Trump's Minnesota Surge Threatened Democracy, Judge Warns.*[1] The article relies on interviews with seven judges of this district regarding the Administration's immigration enforcement efforts in Minneapolis. As relevant here, Judge Tunheim stated on the record: "They weren't arresting, in my view, people who were dangerous criminals on the street." *Id.* at 10.

---

[1] Matthias Schwartz, *Trump's Minnesota Surge Threatened Democracy, Judge Warns*, N.Y. TIMES, Sept. 17, 2026, https://www.nytimes.com/2026/09/17/us/-politics/minnesota-judge-trump-immigration.html.

That statement also must be understood in the context of the overarching article: a partisan critique of the Trump Administration's immigration enforcement operation in Minneapolis. For example, Judge Patrick Schiltz also participated in the article. He accused the Trump Administration of disregarding court orders, going "over his head" by appealing, and "creat[ing] a grave threat to the rule of law" while invoking the "authoritarian[]" regimes of "Russia," "China," and "North Korea" as cautionary examples. *Id.* at 2, 5, 16. And, echoing Judge Tunheim's express statement, the article paraphrases "the district's judges" as having "said most of the detainees who appeared on their dockets seemed to be ordinary people with homes and jobs." *Id.* at 10. The article includes several staged portraits of Judge Schiltz, along with dramatic pictures of a detainee crying and protestors. The article also acknowledges that "[i]t is indeed unusual for federal judges to give extensive interviews that reflect on periods when their rulings have made headlines." *Id.* at 3.

## LEGAL STANDARD

"Any justice, judge, or magistrate judge of the United States *shall* disqualify himself in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a) (emphasis added). In analyzing whether recusal is required, the question is "whether the judge's impartiality might reasonably be questioned by the average person on the street who knows

all the relevant facts of a case." *Moran v. Clarke*, 296 F.3d 638, 648 (8th Cir. 2002) (quotation omitted). Section 455(a) establishes an objective standard, and the existence of actual bias is irrelevant. *Id.*

**ARGUMENT**

Respectfully, the Court's statements and participation in the Times article, at a minimum, unquestionably call Judge Tunheim's impartiality in this matter into question, and thus necessitate recusal.

***First***, Judge Tunheim has engaged in improper political commentary. Indeed, opining that the Administration was not arresting illegal aliens "who were dangerous criminals on the street" is (factually inaccurate and) an unvarnished political opinion. The Eighth Circuit has warned that, "in order to be and remain impartial, and to be 'perceived' as impartial, the judge must be above the fray, not become an advocate in it." *White v. Nat'l Football League,* 585 F.3d 1129, 1140 (8th Cir. 2009) (citations omitted). But Judge Tunheim jumped directly into the fray by criticizing the Administration's approach to immigration enforcement in cases that came before him based on his subjective policy impressions. Notably, although pandering to the press about even the legality of the Administration's actions would be improper, Judge Tunheim's statement is legally irrelevant (and thus purely political).

In the same vein, the Times article reports that "the district's judges said most of the detainees who appeared on their dockets seemed to be ordinary

people with homes and jobs." Schwartz, *supra* note 1, at 10. This paraphrased summary obviously relates to Judge Tunheim's comments. Taken separately or collectively, the message is clear: as long as illegal aliens (supposedly) are not "*dangerous* criminals," and at least to the extent they "seem[] to be ordinary people with homes and jobs" based on a judge's uninformed (or informed mainly by an alien's lawyer) perspective, the immigration laws passed by Congress should be ignored by the Executive. But our Constitution entrusts the Executive to take care over immigration matters, not turn a blind eye toward them.

***Second***, a reasonable observer would conclude that Judge Tunheim endorses the other statements in the article, including the highly policial statements of Judge Schiltz. Statements that, for example, compare the Administration to foreign adversaries, flagrantly violate a judge's ethical duty to maintain the appearance of impartiality. *See Guide to Jud. Policy*, Vol. 2, Pt. B, Ch. 2, Advisory Op. No. 55 (June 2009) ("In every case, the judge should avoid sensationalism and comments that may result in confusion or misunderstanding of the judicial function or detract from the dignity of the office."). And because Judge Tunheim went on the record, a reasonable observer would conclude that Judge Tunheim endorses Judge Schiltz's highly partisan comments. That reinforces the appearance of bias in immigration-related cases that come before Judge Tunheim.

***Third***, relatedly, a reasonable observer would conclude that Judge Tunheim understood the nature of the article before it was published—and that the article advances an anti-Trump Administration agenda in the immigration context. To illustrate, the article features a picture of a "federal immigration operations" protest showing numerous signs that read "F*ck ICE" along with similar rhetoric. Schwartz, *supra* note 1, at 9. Regrettably, the Court lent the prestige of his judicial office to this too. And notably, pictures of the many *pro*-immigration enforcement rallies across the country are nowhere to be found in the article. In choosing to participate in a highly politicized article that is "clearly associated with one side of a controversial issue[,]" Judge Tunheim "risk[ed] creating questions about impartiality" that now cast a shadow over this case. Advisory Op. No. 118. "With respect to some particularly controversial topics, judges should be mindful that simply addressing certain topics might be viewed as taking a partisan position or reflecting a lack of impartiality." *Id.* Immigration enforcement is unquestionably such a topic.

***Fourth***, Judge Tunheim's participation in the Times article reasonably raises the concern that his desire for favorable media attention may influence his decision making in this case. "Judges should not create the impression that they covet publicity." *White*, 585 F.3d at 1140. "When judges make gratuitous public comments on issues closely related to judicial duties, they risk giving

the impression that they have an uncommon interest and degree of personal involvement in the subject matter." *Id.* (internal quotations omitted). "Self-interested behavior in submitting to press interviews may also lead to accusations that a judge will be motivated to decide issues in a way that prompts favorable media attention." *Id.*; *see also United States v. Microsoft Corp.*, 253 F.3d 34, 115 (D.C. Cir. 2001) ("Members of the public may reasonably question whether . . . a publicity-seeking judge might consciously or subconsciously seek the publicity-maximizing outcome.").

***Fifth***, an advisory opinion providing that judges may speak on "the independence of the judiciary, or advocate for the rule of law in general," does not change the calculus that recusal is required in this case. Advisory Op. No. 118. A judge cannot ignore their ethical obligations and make partisan statements that have nothing to do with judicial independence, then couch it all in terms of "the rule of law." Although not exhaustive, the examples in Advisory Opinion No. 118 are instructive: permitting judges to speak on issues such as "judicial security," "the history and role of the federal courts in our society, their operation and governance, the importance of jury service, suggestions to improve the legal system, and related topics." *Id.* By contrast, on its face, Judge Tunheim's political statement that the Administration was not arresting illegal aliens "who were dangerous criminals on the street" has nothing to do with advocating for the rule of law or judicial

independence. Schwartz, *supra* note 1, at 10. Nor does his apparent impression that detained illegal aliens are "ordinary people." *Id.*

***Finally***, this immigration-related case implicates all the concerns discussed above. Defendant is accused of illegally voting as an alien. This case involves a central aspect of the Administration's immigration-enforcement efforts: ensuring only eligible American citizens can vote. A reasonable observer would now question whether that reality is influencing the Court's decisions. How might a reasonable observer understand Judge Tunheim's views on Defendant and this case? If Judge Tunheim perceives her as an ordinary, non-dangerous person, a reasonable observer might conclude that he views the enforcement of federal law (immigration, election, criminal, or otherwise) against her as unwarranted. After all, that is the clear implication of Judge Tunheim's statements. To Judge Tunheim, the "rule of law" apparently means *ignoring* the law when it comes to illegal aliens who have *broken* the law.

In sum, Judge Tunheim's statements and participation in the New York Times article, at a minimum, give rise to the appearance of bias in immigration-related cases. Judge Tunheim should therefore recuse from this case.

## CONCLUSION

For the reasons set forth above, the United States respectfully requests that Judge Tunheim recuse himself from this case.

Respectfully submitted,

Dated: October 20, 2026

*/s/ Stanley E. Woodward*

STANLEY E. WOODWARD, JR.
Associate Attorney General
950 Pennsylvania Ave NW
Washington, DC 20530
771-220-9755
stanley.woodward@usdoj.gov

*Counsel for the United States of America*